■ MARK WILLIAMS, Respondent-Appellant, v RONALD J. MOORE et al., Appellants-Respondents. [602 NYS2d 199] —In an action to recover damages, *inter alia,* for false arrest and malicious prosecution, the defendants City of New York, Ronald Moore, Larry Cummings, and Paul Bostic appeal, as limited by their brief, from so much of a judgment of the Supreme Court, Kings County (Hutcherson, J.), dated October 3, 1990, as, upon a jury verdict and an order of the court holding that the sum of $400,000 constituted reasonable compensation, is in favor of the plaintiff and against them in the principal sum of $400,000 in compensatory damages, the defendant Moore further appeals from so much of the judgment as is in favor of the plaintiff and against him in the principal sum of $9,840 in punitive damages, the defendant Cummings further appeals from so much of the judgment as is in favor of the plaintiff and against him in the principal sum of $2,952 in punitive damages, the defendant Bostic further appeals from so much of the judgment as is in favor of the plaintiff and against him in the principal sum of $2,952 in punitive damages, and the plaintiff cross-appeals from so much of the same judgment as reduced the jury verdict in his favor from the sum of $1,000,000 in compensatory damages to

the sum of $400,000, and which dismissed his cause of action to recover damages for malicious prosecution.

Ordered that the judgment is reversed insofar as appealed from, on the law, without costs or disbursements, the demands for punitive damages are stricken, and the matter is remitted to the Supreme Court, Kings County, for a new trial on the issue of compensatory damages only; the findings of fact as to liability are affirmed; and it is further,

Ordered that the cross appeal from so much of the judgment as reduced the jury verdict to $400,000 is dismissed as academic, in light of our determination on the appeal, and the judgment is otherwise affirmed insofar as cross-appealed from, without costs or disbursements.

During the early morning hours of December 3, 1984, a Brooklyn woman was accosted by an unknown assailant in the elevator of her apartment building. The unidentified man robbed the victim at gunpoint, and attempted to force her up to the roof of the building. When the victim resisted and began to scream, the perpetrator shot her in the chest and fled.

Two days after the shooting, a police detective showed the victim photographs of a number of individuals, including that of the plaintiff. When the victim saw the plaintiff's photograph, she told the detective that he "would be" her assailant "if he had shorter hair * * * and a thinner face". The plaintiff was arrested on the following morning, and the victim identified him from a lineup as the man who had robbed and shot her. The plaintiff was arraigned on December 7, 1984, and was subsequently indicted, *inter alia,* on charges of attempted murder in the second degree, robbery in the first degree, and assault in the first degree.

Following his indictment, the plaintiff moved to suppress the victim's prospective identification testimony upon the ground that the identification procedures utilized by the police had been unduly suggestive. After conducting a *Wade* hearing, the court rejected the plaintiff's claim, and denied the motion. In reaching its determination, the hearing court additionally noted that the defendant's arrest was supported by probable cause. The case proceeded to trial in December 1985 and the victim initially testified that the plaintiff was the man who had robbed and shot her. However, when the victim was shown a photograph of another individual who had previously been investigated in connection with the crime, she stated that this individual looked more like her assailant than did

the plaintiff. The People responded by moving to dismiss all criminal charges against the plaintiff, and the motion to dismiss was granted.

The plaintiff thereafter commenced this action against the City of New York and three members of the New York City police force, seeking damages for false arrest, malicious prosecution, and violation of his civil rights. At the conclusion of the plaintiff's case, the defendants moved to dismiss the false arrest cause of action, contending that the doctrine of collateral estoppel barred the plaintiff from litigating the issue of whether the police had probable cause for his arrest because this issue had been determined against him after a *Wade* hearing in the criminal proceeding. The Supreme Court denied the defendants' motion, and the jury found in the plaintiff's favor on his false arrest claim, awarding him compensatory damages in the principal sum of $1,000,000, and punitive damages. The court subsequently reduced the award of compensatory damages to the principal sum of $400,000, and the plaintiff and the defendants now appeal.

On appeal, the defendants continue to maintain that the plaintiff's false arrest claim must be dismissed because a court in the criminal proceeding found, after a *Wade* hearing, that his arrest was supported by probable cause, which barred the plaintiff from relitigating this issue in the subsequent civil action. We disagree. Since the criminal charges against the plaintiff were ultimately dismissed on the People's motion after the victim's identification testimony was substantially impeached, the plaintiff was precluded from seeking appellate review of the pretrial *Wade* determination. That determination, therefore, was not "sufficiently final to be accorded collateral estoppel effect" in the instant action *(People v Howard,* 152 AD2d 325, 329; *see also, People v Sailor,* 65 NY2d 224, 229, *cert denied* 474 US 982; *Matter of McGrath v Gold,* 36 NY2d 406; *People v Sweeper,* 127 AD2d 507, 509).

We further reject the defendants' claim that the Supreme Court erred in submitting the false arrest claim to the jury because the victim's photographic identification established probable cause for his arrest as a matter of law. Where, as at bar, an arrest is made without a warrant, a presumption arises that it was unlawful, and the burden of proving that the arrest was otherwise privileged is cast upon the defendant *(see, Dabbs v State of New York,* 59 NY2d 213, 218; *Broughton v State of New York,* 37 NY2d 451, *cert denied* 423 US 929; *Berson v City of New York,* 122 AD2d 7). To meet this burden, the defendants must show that the arrest was based on

probable cause *(see, Dabbs v State of New York, supra; Broughton v State of New York, supra)*. Although it is settled law that probable cause for a valid arrest may be provided by a photographic identification *(see, People v Brewster,* 100 AD2d 134, 141, *affd* 63 NY2d 419; *see also, Gisondi v Town of Harrison,* 72 NY2d 280; *People v Crews,* 162 AD2d 462; *Berson v City of New York, supra)*, here the record demonstrates that the victim did not positively identify the plaintiff as her assailant when she viewed his photograph. Under these circumstances, the defendants did not meet their burden of establishing that the plaintiff's warrantless arrest was supported by probable cause, and the defendants are thus liable for false arrest *(see, Dabbs v State of New York, supra,* at 218).

We find merit, however, to the defendants' contention that it was error for the court to instruct the jury that the plaintiff could recover damages on his false arrest claim from the date of his arrest, December 6, 1984, until the date of the second Grand Jury indictment on July 16, 1985. As the defendants correctly point out, damages for false imprisonment are not recoverable after arraignment *(see, Dabbs v State of New York, supra,* at 218; *Broughton v State of New York, supra,* at 459). Subsequent damages resulting from continued incarceration are attributable only to the tort of malicious prosecution, a claim which was properly dismissed against the defendants, since the record reveals no malice *(see, Dabbs v State of New York, supra; Carthens v City of New York,* 168 AD2d 408). Thus, while the plaintiff, who was arraigned one day after his arrest, may recover a sum which reasonably compensates him for the defendants' wrongdoing, including loss of earnings, injury to reputation, and humiliation, he can only recover for injuries resulting from his prearraignment detention *(see, Dabbs v State of New York, supra)*. Accordingly, we remit the matter to the Supreme Court for a new trial on the issue of compensatory damages.

We further agree with the defendants' contention that the award of punitive damages against the individual defendants should be set aside. Although an award of punitive damages should not be lightly disturbed *(see, Nardelli v Stamberg,* 44 NY2d 500, 503), under no reasonable view of the evidence adduced at trial can it be concluded that the individual defendants acted maliciously in connection with the defendant's arrest. Consequently, the plaintiff may not recover punitive damages against the individual defendants for false arrest *(see, Byrd v New York City Tr. Auth.,* 172 AD2d 579).

We have examined the parties' remaining contentions, and

find that they are without merit, or do not warrant reversal. Eiber, J. P., O'Brien, Ritter and Copertino, JJ., concur.